# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E D N.Y

★ DEC 29 2009 ★

BROOKLYN OFFICE



| | |
|---|---|
| L. GREENE d/b/a TISA'S CAKES, <br><br> Plaintiff, <br><br> v. <br><br> NORTHERN LEASING SYSTEMS, INC.; ONLINE DATA CORPORATION; and iPAYMENT, INC. <br><br> Defendants. | Civil Action No. <br><br> **CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL** <br><br> CV 09 - 5679 <br> GOLD, R.;CH. |

Plaintiff Letecia Greene d/b/a Tisa's Cakes ("Plaintiff"), individually and on behalf of others similarly situated, complains against Defendants Northern Leasing Systems ("NLS"), Online Data Corporation ("Online Data"), and iPayment, Inc. ("iPayment") (collectively, "Defendants"), upon personal knowledge as to itself and own acts, and as to all other matters upon information and belief, based upon, *inter alia*, the investigation made by its attorneys, as follows:

## OVERVIEW OF THE ACTION

1. Plaintiff brings this action individually and on behalf of a proposed class of entities that were injured by Defendants' business acts and practices in charging cancellation fees.

2. The proposed class/es consist of all entities who entered into Leasing Agreements with NLS and/or Online Data for electronic payment processing services pursuant to contracts that include an early termination fee provision (also called an Early Termination Fee or Early Cancellation Fee, collectively, "ETF") or who have paid or been charged an ETF by Defendants.

3. Through a uniform scheme and common course of conduct, Defendants charged Plaintiff and the putative Class ETFs of $350.00 if they cancelled their electronic payment processing subscription at any time before the end of the Leasing Agreement, regardless of the reason(s) for cancellation.

4. The amount of the ETF imposed does not vary during the term of the service plan. The customer is required to pay the full ETF whether he or she purchases the machine, cancels five (5) weeks after the Leasing Agreement goes into effect or one day before it expires.

5. As alleged herein, Defendants' conduct gives rise to Plaintiff's claims for: (1) violation of New York's Consumer Protection law; (2) unjust enrichment; and (3) Declaratory Relief pursuant to 28 U.S.C. § 2201.

## JURISDICTION AND VENUE

6. This Court has jurisdiction pursuant to 28 U.S.C. § 1332(d). This is a class action involving more than 100 class members. At least one member of the class is a citizen of a State different from defendants, and the amount in controversy, in the aggregate, exceeds the sum of $5,000,000.00 exclusive of interest and costs.

7. Venue is proper under 28 U.S.C. § 1391. Defendant Online Data resides in this District, conducts substantial business in this District, and has received substantial compensation in this District.

## PARTIES

8. Plaintiff Tisa's Cakes is a sole proprietorship owned by Ms. Letecia Greene with its principal place of business in Eufaula, Barbour County, Alabama.

9. Defendant Northern Leasing Systems, Inc. is a New York Corporation with its principal place of business in New York.

-2-

10.     Defendant Online Data Corporation is a wholly owned subsidiary of iPayment, Inc., a registered ISO/MSP of JPMorgan Chase Bank, Hicksville, New York. iPayment, Inc. is a foreign corporation with its principal place of business in Tennessee.

## FACTS
### Early Termination Fees

11.     Defendants offer to the public credit card processing services. These services generally have two components: one, a product lease for the actual machine on which credit cards are "swiped" and charges are posted to the account of the swiped card; and two, a service lease which governs the fees billed to the customer for each credit card transaction processed by the Defendants.

12.     The product lease is defined by Defendants through standard Equipment Finance Leases ("Leases").

13.     Defendants distribute the Leases on preprinted, standardized forms that are not subject to modification or negotiation. Defendants present these Leases to prospective subscribers on a "take it or leave it" basis. These Leases are contracts of adhesion.

14.     These Leases contain a choice of law clause stating that they are to be governed by the laws of the State and City of New York.

15.     The service lease is governed by a Merchant Agreement, signed by Plaintiff and a representative of Online Data. The Merchant Agreement is also distributed on preprinted, standardized forms that are not subject to modification or negotiation. Defendants present the Merchant Agreement to prospective subscribers on a "take it or leave it" basis; it too is a contract of adhesion.[1]

---

[1]     A copy of the Equipment Finance Lease with Northern Leasing Systems signed by Plaintiff's Owner, Letecia Greene, is attached as Exhibit A. A copy of the Merchant Agreement, i.e., the credit card

16. Neither the Lease nor the Merchant Agreement (collectively, "Lease Agreements") contains a provision permitting Defendants to charge an Early Termination Fee.

17. The Merchant Agreement refers to a "MERCHANT PROCESSING AGREEMENT", which was never provided to Plaintiff. On information and belief, the charged Early Termination Fee is included in this document, which Plaintiff believes, as a common business practice, is never provided to Defendants' customers, including Plaintiff.

18. The ETF charged to Plaintiff and, on information and belief, to class members, is $350.00.

19. On information and belief, the ETF does not vary during the term of the contract. Defendants impose a flat early termination fee of $350.00 on merchants whether they cancel fifteen calendar days into the contract period or one day before the contract is scheduled to expire.

20. On information and belief, the customer must pay the ETF even if cancellation is the result of the customer purchasing and no longer leasing the machine, or because of non-existent, poor, or otherwise inadequate service, all of which is reflected in Defendants' business records.

21. On information and belief, the ETF is also due if Defendants unilaterally terminate the Lease for, among other things, nonpayment by the customer.

22. The ETF is not a reasonable measure of the anticipated or actual loss, if any, that the termination causes Defendants and, thus, is an unlawful penalty.

23. The ETF is not designed to compensate Defendants for damages, if any, arising from the early termination, but rather is designed to serve as a disincentive for customers to

processing agreement, with Online Data signed by Plaintiff's Owner, Letecia Greene, is attached as Exhibit B.

switch to competing services in the event that they become dissatisfied with the services provided by Defendants.

24.    If and to the extent that Defendants suffer any damage upon early termination of a customer's contract, it is neither impracticable nor extremely difficult to calculate the actual damage. Further, if and to the extent Defendants suffer any damage upon early termination of a service contract, the flat-fee early termination charge of $350.00 is not a reasonable measure or estimation of such damages.

25.    This ETF is a liquidated damages clause, which is an illegal penalty when damages are readily calculable, as they are here, and when the charge bears no reasonable relationship to the anticipated harm in the event of a breach by the other party. The ETF is neither designed, nor intended to compensate Defendants for any damages arising from early termination, but has the effect and purpose of locking in subscribers and discouraging them from switching to competing services (what is known as "churn").

26.    Defendants' ETF stifles competition in the electronic payment processing industry by preventing merchants from freely shopping around for the best service.

27.    Plaintiff is informed and believes that the early termination penalty provisions have permitted Defendants to collect revenues and generate enormous profits as a result of: (a) the payment of the early termination penalties; and (b) the revenue generated by tethering Plaintiff to service for at least the original contract period, and, in most cases, for additional years.

### Facts As To Named Plaintiff

28.    On March 16, 2005, Mr. Jeri Radtke, a salesman with Quality Merchant Services ("QMS"), visited Ms. Letecia Greene at her store, Tisa's Cakes, to offer her a lease on a credit

card processor. Plaintiff signed an Equipment Finance Lease with Northern Leasing Systems (attached as Exhibit A) and a credit card processing agreement with Online Data (attached as Exhibit B). The equipment lease would run for 48 months, with monthly payments of $35.00, totaling $1680.00

29.     On March 17, 2005, Plaintiff contacted QMS to cancel her lease with Northern Leasing Systems and purchased the payment processor at a price of $750.00.

30.     In or around March 2008, Plaintiff subscribed to a new credit card processing service and her service with Online Data was cancelled.

31.     On April 21, 2008, Online Data debited $350 from Plaintiff's bank account, for a purported "Cancel Fee."

32.     Neither the equipment lease with Northern Leasing Systems, nor the services agreement with Online Data, contains a provision for an ETF charge.

33.     Neither Northern Leasing Systems nor Online Data provided Plaintiff with a document establishing a basis for the "Cancel Fee."

34.     Online Data could have easily ascertained the actual damages, if any, it incurred when Plaintiff cancelled its Lease, but it did not. Instead, it imposed an illegal penalty.

## APPLICATION OF NEW YORK LAW

35.     The Equipment Finance Lease provides that the laws of the State of New York apply to Defendant's Agreement with Plaintiff and Class.

36.     Defendants' relevant business, including the formulation and execution of the unlawful practices alleged herein, occurred in, or emanated from New York, Defendant's principal place of business. Accordingly, New York has significant contacts and/or a significant aggregation of contacts to the claims asserted by Plaintiff and Class.

37.     New York has a materially greater interest than any other State in regulating unlawful conduct by Defendants, which conducted its unlawful practices out of its principal place of business in New York.  These rights and remedies further fundamental public policies of the State of New York.

## CLASS ACTION ALLEGATIONS

### A.     Definition of the Class

38.     Plaintiff brings this action on its own behalf and as a Class Action pursuant to Rules 23(b)(2) and 23(b)(3) of the Federal Rules of Civil Procedure on behalf of the following proposed "Class" or "Class Members":

> All Subscribers Class:
>
> All persons and entities who leased equipment from Northern Leasing Systems and/or Online Data pursuant to Leases which include an Early Termination Fee.
>
> All Subscribers Charged an ETF Class:
>
> All persons and entities who leased equipment from Northern Leasing Systems and/or Online Data pursuant to Leases who have been charged an Early Termination Fee.

39.     The classes may be modified pending discovery.  Excluded from the ETF Classes are members of the judiciary, Defendants, any entity in which it has a controlling interest, and its officers and directors and the members of their immediate families.

### B.     Numerosity

40.     At this time, Plaintiff does not know the exact size of the ETF Classes; however, due to the nature of the trade and commerce involved, Plaintiff believes that members of the ETF Classes are so numerous that joinder of all members is impracticable.  The number of class members can be determined through appropriate discovery.

## C.    Commonality and Predominance

41.    There are questions of law or fact common to the ETF Classes, including at least the following:

      (a)    Whether the ETF is unjust, unreasonable, and/or unlawful;

      (b)    Whether Defendants charged ETF Class Members ETFs;

      (c)    Whether the ETF is unjust, and/or unlawful;

      (d)    Whether Defendants' conduct constitutes deceptive, unfair and/or oppressive conduct;

      (e)    Whether Defendants are/were unjustly enriched;

      (f)    Whether Declaratory Relief is appropriate; and

      (g)    Whether Plaintiff and the ETF Class Members have been damaged, and if so, the proper measure of such damages.

42.    The above common questions predominate over questions affecting only individual members of the ETF Classes.

## D.    Typicality

43.    Plaintiff has the same interests in this matter as all other members of the ETF Classes, and their claims are typical of all members of the class.

## E.    Adequacy

44.    Plaintiff is committed to pursuing this action and has retained competent counsel experienced in the prosecution and successful resolution of consumer class actions. Plaintiff will fairly and adequately represent the interests of ETF Class Members and does not have interests adverse to the ETF Classes.

### F. Superiority

45. A class action is the superior method for fair and efficient adjudication of the controversy. The likelihood that individual ETF Class Members will prosecute separate actions is remote due to the extensive time and considerable expense necessary to conduct such litigation, especially in view of the relatively modest amount of monetary, injunctive, and equitable relief at issue for each individual ETF Class Member. This action will be prosecuted in a fashion to ensure the Court's able management of this case as a class action on behalf of the Class defined above.

### <u>COUNT I</u>
**(All Subscribers Charged an ETF - Violation of New York Consumer Protection Act)**

46. Plaintiff repeats the allegations contained in Paragraphs 1-45 as if fully set forth herein.

47. The Terms and Conditions by which all parties are bound has a choice of law clause stating that New York law applies to all parties.

48. Plaintiff brings its statutory fraud claim pursuant to N.Y. Gen. Bus. § 349, *et seq.* (McKinney 2004) which was enacted and designed to protect consumers against unfair, deceptive and/or fraudulent business practices. New York's Consumer Fraud Act (N.Y. Gen. Bus. § 349) provides:

> Deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are hereby declared unlawful.

49. Defendants provide credit card processing services to the general public through uniform sales procedures and agreements.

50. The imposition of an ETF is an act or practice in the conduct of trade or commerce.

51.     The imposition of an ETF impacts the public interest.

52.     The imposition of an ETF is deceptive because Defendants never disclose its existence to Plaintiff and Class members upon entering into the Lease Agreement.

53.     The imposition of an ETF is deceptive because, on information and belief, Defendants describe it as a liquidated damages clause and states that its damages are difficult or impracticable to calculate, when, in fact, it is a charge to recover the cost of equipment, and Defendants' damages, if any, are in fact quite simple to calculate and/or recover.

54.     The imposition of an ETF is unfair because while class members are always at risk of breach, Defendants are never at risk of breach.

55.     The imposition of an ETF is further unfair because it is imposed even when Defendants do not suffer any damages (as reflected in their own records) from a class member's early cancellation.

56.     The ETF is an illegal penalty and is unfair because it offends public policy; is so oppressive that the consumer has little alternative but to submit (*e.g.*, Defendants turn "delinquent" accounts over to collections and negatively impact consumers credit history); and causes consumers substantial injury.

57.     Plaintiff and members of the Class suffered economic injury as a direct and proximate result of Defendants' conduct, including but not limited to the amount of the ETFs improperly charged.

58.     Defendants committed deceptive acts or practices within the meaning of the Consumer Acts by engaging in the acts and practices alleged herein.

WHEREFORE, Plaintiff, individually and on behalf of the Subscribers Charged an ETF Class of persons described herein, prays for an Order as follows:

A. Finding that this action satisfies the prerequisites for maintenance as a class action and certifying the Classes defined herein;

B. Designating Plaintiff as Class representative and counsel as Class counsel;

C. Entering judgment in favor of Plaintiff and the Class and against Defendants;

D. Awarding Plaintiff and Class members their individual damages and attorneys' fees and allowing costs, including interest thereon; and

E. Granting such further relief as the Court deems just.

## COUNT II
### (All Subscribers Charged an ETF - Unjust Enrichment)

59. Plaintiff repeats the allegations contained in Paragraphs 1-58 as if fully set forth herein.

60. This Count is asserted by Plaintiff individually and on behalf of the ETF Class, as defined herein.

61. Defendants received and retained a benefit conferred by Plaintiff and ETF Class Members at their expense through the imposition and collection of ETFs.

62. Defendants have benefited unjustly at Plaintiff's and Class Members' expense, which in equity and good conscience, Defendants should not be permitted to retain.

63. Plaintiff and Class Members have no adequate remedy at law because of Defendants' conduct.

64. As a direct and proximate result of Defendants' unjust enrichment, Plaintiff and the Class members have suffered non-monetary and monetary injury.

65. Plaintiff, on behalf of itself and the ETF Class, is entitled to restitution from Defendants and an order to ameliorate all ETF credit-related dunning and for the disgorgement of all ETF profits, benefits, and other compensation obtained by Online Data for its wrongful conduct.

WHEREFORE, Plaintiff, individually and on behalf of the ETF Class of persons described herein, prays for an Order as follows:

A. Finding that this action satisfies the prerequisites for maintenance as a class action and certifying the Classes defined herein;

B. Designating Plaintiff as Class representative and counsel as ETF Class counsel;

C. Entering judgment in favor of Plaintiff and the Classes and against Defendants;

D. Awarding Plaintiff and Class members their individual damages and attorneys' fees and allowing costs, including interest thereon; and

E. Granting such further relief as the Court deems just.

### COUNT III
**(Declaratory Relief Pursuant To 28 U.S.C. § 2201)**

66. Plaintiff repeats the allegations contained in Paragraphs 1-65 as if fully set forth herein.

67. This Count is asserted by Plaintiff individually and on behalf of the Class, as defined herein.

68. There is an actual controversy between Defendants and the Class concerning the existence of any ETF provision within the Lease Agreements to which they are all parties, and the enforceability of its imposition by Defendants against the Class.

69. Pursuant to 28 U.S.C. § 2201 this Court may "declare the rights and legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."

70. Plaintiff and Class Members are interested parties who seek a declaration of their rights and legal relations vis-à-vis Defendants with regard to the existence and enforceability of ETF provisions contained in the customer service Leases to which they are all parties.

71. Defendants' ETF is an unenforceable penalty in that it purports to be a liquidated damages clause when, in fact, the ETF is not a reasonable estimate of the harm Defendants might incur, if any, in the event that the customer were to terminate his or her customer service Lease, nor are such damages difficult or impractical to calculate.

72. Moreover, on information and belief, the ETF is chargeable to the customer even if the Lease is terminated by Defendants as a result of a breach by Defendants. Thus, regardless of the reason for the termination of the customer service Lease or the fault of the parties, Defendants impose an ETF on its customers.

73. Plaintiff and other class members who were charged and who paid ETFs to Defendants have been damaged because ETF was an illegal penalty.

74. Plaintiff and other class members who were charged but who did not pay an ETF to Defendants have had their credit damaged because Defendants report that debts are owed by such persons when, in fact, no such debt exists.

WHEREFORE, Plaintiff, individually and on behalf of the ETF Class of persons described herein, prays for an Order as follows:

A. Finding that this action satisfies the prerequisites for maintenance as a class action and certifying the Class defined herein;

B. Designating Plaintiff as representative of the Class and counsel as Class counsel;

C. Entering judgment in favor of Plaintiff and the Class and against Defendants;

D. Awarding Plaintiff and Class members their individual damages and attorneys' fees and allowing costs, including interest thereon; and

E. Granting such further relief as the Court deems just.

## DEMAND FOR JURY TRIAL

The undersigned hereby demands a trial by jury as to all claims so triable.

Dated: New York, New York
       December 30, 2009

**REESE RICHMAN LLP**

By:   /s/   _Michael Reese_
Michael R. Reese
875 Avenue of the Americas, 18th Floor
New York, New York 10001
Telephone: (212) 643-0500
Facsimile: (212) 253-4272

***Attorneys for Plaintiff and Proposed Class***

*Of Counsel:*

Eric D. Freed
Jeffrey A. Leon
Eric C. Brunick
**FREED & WEISS LLC**
111 West Washington Street, Suite 1331
Chicago, Illinois 60602

Jim S. Calton, Jr.
**CALTON & CALTON**
226 East Broad Street
Eufaula, Alabama 36027

# EXHIBIT A

LESSOR HAS ASSIGNED TO CONGRESS FINANCIAL CORPORATION, AND HAS GRANTED CONGRESS FINANCIAL CORPORATION A SECURITY INTEREST IN, ALL RIGHT, TITLE AND INTEREST OF LESSOR IN AND TO THIS LEASE, ALL PRESENT AND FUTURE RENTAL, LEASE AND OTHER PAYMENTS AND CHARGES OWED TO LESSOR HEREUNDER AND ALL PRODUCTS AND PROCEEDS THEROF, PURSUANT TO THE LOAN AND SECURITY AGREEMENT, DATED MAY 3, 1996, AS AMENDED, BETWEEN CONGRESS FINANCIAL CORPORATION AND LESSOR, AS THE SAME NOW EXISTS AND MAY HEREAFTER BE AMENDED, MODIFIED, SUPPLEMENTED, EXTENDED, RENEWED, RESTATED OR REPLACED.

## NorthernLeasingSystems,Inc.
132 West 31st Street, 14th Floor, New York, NY 10001-5095 • 212-239-3500

| Lease Number | Salesman Code |
|---|---|
|  | ZM588 |

# EQUIPMENT FINANCE LEASE

### ABOUT YOUR BUSINESS

Lessee (Corporate Business Name)  D/B/A  **Tisa's Cake**

Billing Address  **716 S. Randolph Ave**

City **Eufaula**  State **AL**  Zip Code **36027**  Telephone **334 616·7771**

Type of Business **Retail Cakes**  E-Mail Address  Yrs. in Business **3 yrs**

Business Address (if different from above)

City  State  County  Zip Code  Business Telephone (   )

Name of Principal **Letecia Greene**  Title **Owner**

Home Address **131 Twin Lakes rd.**

City **Eufaula**  State **AL**  Zip Code **36027**  Telephone **334 688 5004**

### EQUIPMENT SUPPLIER

Supplier's Name **Quality Merchant Services**

Address **195 Tait rd**  City **Stockbridge**  State **GA**  Zip Code **30281**  Telephone **334 618 3790**

### EQUIPMENT INFORMATION

Description (Manufacturer, Model, Serial Number)  Quantity

**Nurit 2085**  **one**

Equipment Location

### SCHEDULE OF PAYMENTS

Basic Monthly Lease Payment  $ **35 00**

Minimum Lease Term  Months **48**

Plus Applicable Taxes

### PAYABLE AT SIGNING OF THE LEASE

☐ First & Last Monthly Payment  $ _____

☒ Last Monthly Payment  $ **35 00**

Plus Applicable Taxes

### LEASE ACCEPTANCE

Lessee has read and agrees to all terms and conditions contained in this Equipment Finance Lease. THIS IS A NON-CANCELABLE LEASE FOR THE FULL TERM INDICATED HEREIN.
INVESTIGATIVE CREDIT REPORT: Applicant authorizes Northern Leasing Systems, Inc., its assigns or its agents to obtain an investigative credit report from a credit bureau or a credit agency and to investigate the references given on any other statement or data obtained from Lessee.

X **Letecia Greene**  **owner**  **Letecia Greene**  **3-16-05**
Lessee's Signature/Title  Print Name  Date

Page 1 of 6

NLCongressPDF 11/04

## ABOUT YOUR BANK

Bank Name _Compass Bank_ Routing _____ Account # _____

Lessee hereby authorizes Northern Leasing Systems, Inc., or its designee successor or assign (hereinafter "Lessor") to withdraw any amounts including any and all sales and property taxes now due or hereinafter imposed owed by Lessee under this Equipment Finance Lease ("Lease") by initiating debit entries to Lessee's account at the financial institution (hereinafter "Bank") indicated above or at such other Bank as Lessee may from time to time use. In the event of default of Lessee's obligation hereunder, Lessee authorizes debit of Lessee's account or credit card for the full amount due under this Lease or any portion thereof. Further, Lessee authorizes Bank to accept and to charge any debit entries initiated by Lessor to Lessee's account. In the event that Lessor withdraws erroneously from Lessee's account, Lessee authorizes Lessor to credit Lessee's account for the amount erroneously withdrawn. Lessee understands that the foregoing ACH authorization is a fundamental condition to induce Lessor to accept this Lease. Consequently, such authorization is intended to be irrevocable. In the event that Lessee terminates such ACH authorization, Lessor, in its sole discretion, may either deem such termination to be an event of default in accordance with paragraph 11 hereof or may invoice Lessee for payments due under this Lease and include a $5.00 per month processing fee in such invoices.

THE TERMS OF THIS LEASE REPRESENT THE FINAL EXPRESSION OF THE AGREEMENT BETWEEN LESSOR AND LESSEE AND MAY NOT BE WAIVED ALTERED MODIFIED REVOKED OR RESCINDED AND ALL PRIOR AND/OR CONTEMPORANEOUS ORAL AND WRITTEN REPRESENTATIONS ARE MERGED HEREIN. ANY AGREEMENTS TO MODIFY THIS LEASE MUST BE BY A SIGNED WRITING EXECUTED BY LESSOR AND LESSEE AND NO ATTEMPT AT ORAL MODIFICATION OR RECISION OF THIS LEASE OR ANY TERM HEREOF WILL BE BINDING. BY INITIALIZING THIS PROVISION LESSEE AGREES TO BE BOUND BY THE TERMS OF THIS LEASE AND TO THE EXTENT APPLICABLE THE PROVISIONS CONCERNING A SEPARATELY SIGNED DOCUMENT PURSUANT TO §2A-208 OF THE UNIFORM COMMERCIAL CODE HAS BEEN COMPLIED WITH. LESSEE EXPRESSLY WAIVES ALL OF ITS RIGHTS AND REMEDIES SET FORTH IN ARTICLE 2A OF THE UNIFORM COMMERCIAL CODE, INCLUDING WITHOUT LIMITATION LESSEE'S RIGHTS, IF ANY, TO REPUDIATE, REJECT, REVOKE ACCEPTANCE, CLAIM A SECURITY INTEREST IN THE EQUIPMENT, OFFSET AND COVER. THIS LEASE AND ANY AND ALL MODIFICATIONS AND OTHER AGREEMENTS BETWEEN LESSOR AND LESSEE SHALL ONLY BE EFFECTIVE UPON EXECUTION BY AN OFFICER OF LESSOR.

**LESSEE INITIALS** X _LG_

## PERSONAL GUARANTY

To induce Lessor to make this Lease and purchase the Equipment for Lessee knowing that Lessor is relying on this Guaranty as a precondition to making this Lease, I INDIVIDUALLY, PERSONALLY, ABSOLUTELY AND UNCONDITIONALLY GUARANTY to Lessor (and any person or firm Lessor may transfer its interests to) all payments and other obligations owed by Lessee to Lessor under this Lease and any add-on leases, Equipment Schedules and future leases between Lessor and Lessee, including, but not limited to, Lessor's attorney's fees and legal costs incurred in enforcing this Lease. I will also pay all reasonable costs and fees incurred by Lessor in enforcing this Guaranty. I waive notice of demand and notice of default and I agree that Lessor may proceed directly against me without first proceeding against Lessee or the security (including the Equipment). This Guaranty shall be governed by the laws of New York. I FREELY CONSENT TO PERSONAL JURISDICTION IN THE NEW YORK COURTS INCLUDING WITHOUT LIMITATIONS THE CIVIL COURT OF THE CITY OF NEW YORK AND I WAIVE TRIAL BY JURY. This Guaranty will bind my heirs representatives and successors.

Personal Guarantor's Signature X _Letecia Greene_ , An Individual   Date _3-16-05_

Print Name _Letecia Greene_   Home Telephone _334 688-5004_

Home Address _131 Twin Lakes rd_ City_Eufaula_ State _AL_ Zip Code _36027_

Social Security # _____

Credit Reference For Guarantor ☐ VISA ☐ MasterCard   Account Number _____   Expiration Date _____

## ACCEPTANCE BY Northern Leasing Systems, Inc.

| Signature/Title | Print Name | Date |
|---|---|---|
| | | |

Page 2 of 6

## LEASE TERMS

### 1. LEASE TERM; RENTAL.

Northern Leasing Systems, Inc., its successors and assigns (hereinafter "Lessor"), hereby leases to Lessee and Lessee hereby leases from Lessor the equipment described above together with any computer software including all manuals, updates revisions, program and data files, and documentation relating thereto or used or usable in connection therewith (the "Software") (hereinafter, together with all replacement parts, repairs, additions, substitutions and accessories incorporated therein and/or affixed thereto, referred to as the "Equipment"), on terms and conditions set forth herein. From time to time Lessor and Lessee may execute one or more equipment schedules ("Equipment Schedules"). Each such Equipment Schedule relating to one or more items of Equipment shall be deemed a separate Lease incorporating all of the terms and provisions of this Lease. In the event of a conflict between the terms of this Lease and the terms and conditions of an Equipment Schedule, the terms and conditions of the Equipment Schedule shall govern and control that Equipment Schedule. This Lease shall commence (the "Commencement Date") on the date that the Equipment is accepted by Lessee (the "Acceptance Date") and continue thereafter until terminated as provided for herein. The Acceptance Date shall be the date Lessee is in receipt of the Equipment and, if applicable, the date the Software is transmitted to Lessee. If the Acceptance Date is other than the first day of a calendar month, then the Commencement Date of this Lease shall be the first day of the calendar month following the month which includes the Acceptance Date; and Lessee shall pay to Lessor, in addition to all other sums due hereunder, an amount equal to one-thirtieth of the amount of the average monthly rental payment due or to become due hereunder multiplied by the number of days from and including the Acceptance Date to the Commencement Date of this Lease. Unless otherwise provided herein, the monthly payments shall be payable on the first day of each month after the Commencement Date, in the amount stated above, until the total rent and all other obligations of Lessee shall have been satisfied and paid in full. All monthly lease payments of rent shall be made to Lessor by Automatic Clearing House ("ACH") transfer from Lessee's designated account as provided above. In the event Lessee has paid the first and last monthly lease payments without applicable taxes pursuant to Paragraph 7 hereof, Lessor may add such taxes to the first or a subsequent ACH transfer from Lessee's designated account as provided above. Lessee acknowledges that no interest will be paid on any advance lease payments.

### 2. SOFTWARE.

Lessee's right to use the Software is being acquired pursuant to a sub-license from Vendor to Lessee of a software license agreement between Vendor and the Licensor (collectively the "License"). Lessee reaffirms all of its rights and obligations under the License. Lessor is not a party to the License, but is an express third-party beneficiary. Lessee assigns to Lessor all of its rights and benefits, but Lessee retains all of the obligations and burdens under the License. Lessor sub-licenses back to Lessee, expiring upon the termination or expiration of this Lease or upon an Event of Default.

### 3. PURCHASE AND ACCEPTANCE: NO CANCELLATION: NO WARRANTIES.

Lessee requests Lessor to purchase the Equipment from Equipment Supplier or vendor ("Vendor") and arrange for delivery to Lessee and, Lessee shall pay all assessed costs for delivery and installation of Equipment. Lessor shall have no responsibility for delay or failure of Vendor to fill the order for the Equipment. LESSOR DID NOT SELECT, MANUFACTURE, LICENSE, SUPPLY OR INSPECT THE EQUIPMENT AND HAS NO EXPERTISE REGARDING THE EQUIPMENT. LESSEE HAS SELECTED VENDOR AND THE EQUIPMENT BASED ON LESSEE'S OWN JUDGMENT. LESSOR IS BUYING THE EQUIPMENT AT LESSEE'S REQUEST ONLY FOR THE PURPOSE OF LEASING IT TO LESSEE. Before signing this Lease, Lessee approved the supply contract (if any) between Lessor and Vendor and the License, (if any). Lessee has been advised in writing (or is now advised in this Lease) that Lessee may have rights against Vendor under the supply contract (if any) and the License, (if any) and that Lessee may contact Vendor or Licensor to find out what these rights against Vendor or Licensor are, (if any). THIS LEASE CANNOT BE CANCELLED BY LESSEE AT ANY TIME FOR ANY REASON. LESSEE'S DUTY TO MAKE THE MONTHLY LEASE PAYMENTS HEREUNDER IS UNCONDITIONAL DESPITE EQUIPMENT FAILURE, DAMAGE, LOSS OR ANY OTHER SETOFF, DEFENSE, COUNTERCLAIM OR OTHER CLAIM AGAINST THE VENDOR OR LICENSOR OR ANY OTHER PROBLEM INCLUDING THE REVOCATION OR TERMINATION OF THE LICENSE (IF ANY) OR OF ANY MAINTENANCE, SUPPORT OR OTHER SERVICES TO BE PROVIDED LESSEE THEREUNDER. LESSEE AGREES THAT LESSOR HAS MADE AND MAKES NO REPRESENTATIONS OR WARRANTIES OF ANY KIND OR NATURE, DIRECTLY OR INDIRECTLY, EXPRESS OR IMPLIED, AS TO ANY MATTER WHATSOEVER, INCLUDING THE SUITABILITY OF SUCH EQUIPMENT, ITS DURABILITY, ITS FITNESS FOR ANY PARTICULAR PURPOSE, ITS MERCHANTABILITY, ITS CONDITION, AND/OR ITS QUALITY. AS BETWEEN LESSEE AND LESSOR OR LESSOR'S ASSIGNS, LESSEE LEASES THE EQUIPMENT "AS IS". LESSOR AND LESSOR'S ASSIGNS SHALL NOT BE LIABLE TO LESSEE FOR ANY LOSS, DAMAGE OR EXPENSE OF ANY KIND OR NATURE CAUSED DIRECTLY OR INDIRECTLY (INCLUDING CLAIMS FOR GENERAL, SPECIAL, INCIDENTAL OR CONSEQUENTIAL, DAMAGES OR FOR ANTICIPATORY PROFITS) BY ANY EQUIPMENT LEASED HEREUNDER OR THE USE OR MAINTENANCE THEREOF, OR THE FAILURE OF OPERATION THEREOF, OR REPAIRS, SERVICE OR ADJUSTMENT THERETO, OR BY ANY DELAY OR FAILURE TO PROVIDE ANY THEREOF, OR BY ANY INTERRUPTION OF SERVICE OR LOSS OF USE THEREOF, OR THE USE THEREOF IN VIOLATION OF THE RIGHTS OF ANY PARTY WHOMSOEVER, OR FOR ANY LOSS OF BUSINESS OR DAMAGE WHATSOEVER AND HOWSOEVER CAUSED. NO REPRESENTATION OR WARRANTY AS TO THE EQUIPMENT OR ANY OTHER MATTER BY VENDOR SHALL BE BINDING ON LESSOR OR LESSOR'S ASSIGNS, NOR SHALL THE BREACH OF SUCH RELIEVE LESSEE OR, IN ANY WAY AFFECT, ANY OF LESSEE'S OBLIGATIONS TO LESSOR OR LESSOR'S ASSIGNS, AS SET FORTH HEREIN. LESSOR AND LESSOR'S ASSIGNS DISCLAIM AND SHALL NOT BE RESPONSIBLE FOR ANY LOSS, DAMAGE OR INJURY TO PERSONS OR PROPERTY CAUSED BY THE EQUIPMENT WHETHER ARISING THROUGH THE NEGLIGENCE OF THE LESSEE OR IMPOSED BY LAW. LESSOR MAKES NO, AND SPECIFICALLY EXCLUDES ANY REPRESENTATION OR WARRANTY RELATING TO ANY SOFTWARE, INCLUDING WITHOUT LIMITATION ANY WARRANTY OF TITLE, VALIDITY OR ENFORCEABILITY OF LICENSE, NON-INFRINGEMENT, AVAILABILITY OR QUALITY OF VENDOR OR LICENSOR SUPPORT, OR FITNESS FOR ANY PARTICULAR PURPOSE.

If the Equipment is not properly installed, does not operate as represented or warranted by Vendor or is unsatisfactory for any reason, Lessee shall make any claim on account thereof solely against Vendor or Licensor and hereby waives and releases any and all rights to now or hereafter assert any claim against Lessor concerning the Equipment and shall nevertheless pay Lessor all rent payable under this Lease. Lessor agrees to assign to Lessee, solely for the purpose of making and prosecuting any such claims, any rights it may have against Vendor or Licensor for breach of warranty or representations respecting the Equipment.

NOTWITHSTANDING ANY FEES THAT MAY BE PAID TO VENDOR OR ANY AGENT OF VENDOR, LESSEE UNDERSTANDS AND AGREES THAT NEITHER VENDOR NOR ANY AGENT OF VENDOR IS AN AGENT OF LESSOR AND THAT NEITHER VENDOR NOR HIS AGENT IS AUTHORIZED TO WAIVE OR ALTER ANY TERM OR CONDITION OF THIS LEASE.

### 4. LESSOR TERMINATION BEFORE EQUIPMENT ACCEPTANCE.

If, within sixty (60) days from the date Lessor orders the Equipment, same has not been delivered, installed and accepted by Lessee in form satisfactory to Lessor, Lessor may on ten (10) days written notice to Lessee, terminate this Lease and its obligation to Lessee.

### 5. TITLE.

Lessor shall at all times retain title to the Equipment unless otherwise agreed to in writing. All documents of title and evidences of delivery shall be

Lessee Initials

delivered to Lessor. Lessee shall not change or remove any insignia or lettering which is on the Equipment at the time of delivery thereof, or which is thereafter placed thereon, indicating Lessors ownership thereof. At any time during the term of this Lease, upon request of Lessor, Lessee shall affix to the Equipment in a prominent place, labels, plates or other markings supplied by Lessor stating that the Equipment is owned by Lessor. Lessor is hereby authorized by Lessee, at Lessee's expense, to cause this Lease, or any statement or other instrument in respect of this Lease showing the interest of Lessor in the Equipment, including Uniform Commercial Code Financing Statements, to be filed or recorded and refiled and re-recorded. Lessee agrees to execute and deliver any statement or instrument requested by Lessor for such purpose, and agrees to pay or reimburse Lessor for any filing, recording or stamp fees or taxes arising from the filing or recording of any such instrument or statement. Lessee shall, at its expense, protect and defend Lessor's title at all times keeping the Equipment free from all liens and claims whatsoever except for those created by or in favor of Lessor, its successor and/or assigns, and shall give Lessor immediate written notice thereof and shall indemnify Lessor from any loss caused thereby. Lessee shall execute and deliver to Lessor, upon Lessor's request, such further instruments and assurances as Lessor deems necessary or advisable for the confirmation or perfection of Lessor's rights hereunder. Lessee authorizes Lessor to file any such instrument, including, but not limited to, any Uniform Commercial Code Financing Statement(s), without Lessee's signature and, if the signature of Lessee is required thereon, Lessee irrevocably appoints Lessor as Lessee's attorney-in-fact to execute and file any such statement or other instrument in the name and on behalf of Lessee. It is the intention of the parties that the transaction(s) contemplated herein shall constitute an equipment finance lease and not a security interest of collateral assignment of the Equipment by Lessor. Notwithstanding the intention of the parties, if any court of competent jurisdiction shall hold that the transaction(s) contemplated herein constitute a security interest or collateral assignment and not an equipment finance lease of the Equipment by Lessor, then Lessor has a first lien security interest in the Equipment (including without limitation, the Software and general intangibles, licenses and intellectual Property rights with respect thereto, and all substitutions, modifications, replacements, additions, accessions, proceeds, and products of, to or for any of the foregoing) as of the date hereof to secure the obligations of Lessee, its successors and assigns, hereunder and Lessor shall have all rights and remedies of a secured party under the Uniform Commercial Code as adopted in any applicable jurisdiction. Notwithstanding anything contained herein to the contrary, the Software is subject to the exclusive proprietary rights of the Vendor or Licensor and Lessee shall have no ownership rights in the Software. Lessee shall have no right, title or interest in the Software except as set forth in the License and as specifically provided here.

## 6. CARE AND USE OF EQUIPMENT.

Lessee shall maintain the Equipment in good operating condition, repair and appearance, and protect the same from deterioration, other than normal wear and tear, shall use the Equipment in the regular course of business only within its normal capacity, without abuse and in a manner contemplated by Vendor, and in accordance with the License, shall comply with laws, ordinances, regulations, requirements and rules with respect to the use, maintenance and operation of the Equipment, shall not make any modification, alteration, or addition to the Equipment (other than normal operating accessories or controls or later or production versions and maintenance or enhancement releases related to and permitted under the License which shall when added to the Equipment, become the property of Lessor) without the prior written consent of Lessor, which shall not be unreasonably withheld, shall not so affix the Equipment to realty as to change its nature to real property or fixture, and agrees that the Equipment shall remain personal property at all times regardless of how attached or installed; shall keep and maintain the Equipment at the location shown above, and shall not remove the Equipment without the consent of Lessor, which shall not be unreasonably withheld. Lessee represents that the Equipment is being leased for business and/or professional purposes and agrees that under no circumstances shall this Lease be construed as a consumer contract. Lessor shall have the right during normal hours, upon reasonable prior notice to Lessee and subject to applicable laws and regulations, to enter upon the premises where the Equipment is located in order to inspect, observe or remove the Equipment, or otherwise protect Lessor's interest.

## 7. NET LEASE: TAXES.

Lessee intends the monthly lease payments hereunder to be net to Lessor and Lessee shall pay all sales, use, excise, personal property, stamp, documentary, ad valorem, gross receipt, occupation and other taxes, license and registration fees, assessments, fines, penalties and other charges imposed on the ownership, possession or use of the Equipment during the term of this Lease. Lessor will add such taxes, fees and other charges to the monthly payments hereunder including handling and administration costs. To the extent that such taxes, fees and other charges are not imposed in equal monthly payments, Lessor may estimate the amount thereof and include a proportional amount with each monthly payment hereunder. Lessee agrees to pay such monthly amount as additional monthly rent during the term of this Lease and any extension thereof. Upon Lessor's request, Lessee shall file all necessary returns and reports relating to such taxes, fees and charges. Lessee's obligations under this paragraph 7 shall survive the termination of this Lease.

## 8. INDEMNITY.

Lessee shall and does hereby agree to indemnify and save Lessor, its agents, servants, successors, and assigns harmless against and from any liability, damages, or loss, including reasonable counsel fees, arising out of the ownership, selection, manufacture, possession, leasing, renting, operation (regardless of where, how and by whom operated) control, use, condition (including but not limited to latent and other defects, whether or not discoverable by Lessee), maintenance, delivery, rejection, non-delivery and return or other disposition of the Equipment, and including but not limited to trademark, tort, anticipatory or consequential damages. The indemnities and obligations herein provided shall continue in full force and effect not withstanding termination of this Lease.

## 9. RISK OF LOSS.

Lessee hereby assumes the entire risk of loss, damage or destruction of the Equipment from any and every cause whatsoever during the term of this Lease and thereafter until redelivery to Lessor. No such loss or damage shall impair any obligation of the Lessee under this Lease which shall continue in full force and effect. In the event of loss, damage or destruction of any item of Equipment, Lessee shall promptly notify Lessor and shall at its expense (except to the extent of any proceeds of insurance provided by Lessee which shall have been received by Lessor as a result of such loss, damage or destruction), and at Lessor's option, shall either (a) repair such item, returning it to its previous condition, unless damaged beyond repair, or (b) pay Lessor all accrued and unpaid monthly lease and other payments, late charges and interest, plus an amount (the "Loss Amount") equal to (i) the net present value of all rental payments to become due during the remaining term of this Lease, discounted at a rate of six percent (6%) per annum plus (ii) the amount of any purchase option or obligation with respect to the Equipment, or, if there is no such option or obligation, the fair market value of the Equipment, as estimated by Lessor in its sole reasonable discretion, or (c) replace such item with a like item acceptable to Lessor, in good condition and of equivalent value, which shall become property of Lessor, included within the term "Equipment" as used herein, and leased from Lessor herewith for the balance of the full term of this Lease.

## 10. INSURANCE.

Lessee shall keep the Equipment insured against all risks of loss or damage from every cause whatsoever, in amounts determined by Lessor provided that in no event shall such insurance be less than the loss amount set forth in Section 9(b) herein above. The amount of such insurance shall be sufficient so that neither Lessor nor Lessee will be considered a co-insurer. Lessee shall also carry public liability insurance, personal injury and property damage, covering the Equipment. All such insurance shall provide that losses, if any, shall be payable to Lessor, and all such liability insurance shall include Lessor as named insured and require that the insurer give Lessor at least ten (10) days written notice prior to the effective date of any modification or cancellation thereof. All such policies shall provide that such insurance shall not be cancelled or modified, as against Lessor due to any act or neglect on the part of Lessee or of any other party. Lessee shall pay the premiums for such insurance and deliver to Lessor satisfactory evidence of the insurance coverage required hereunder, on or before the Commencement Date as requested by Lessor. The proceeds of such insurance, payable as a result of loss or damage to any item of the Equipment, shall be applied to satisfy Lessee's obligations as set forth in Paragraph 9 above. Lessee hereby irrevocably appoints Lessor as Lessee's attorney in-fact to make claim for, receive payment of, and execute and endorse all documents, checks or drafts received, in

Lessee Initials

payment for loss or damage under any such insurance policy. In the event Lessee does not provide such evidence of insurance coverage, Lessee is deemed to have chosen to buy the Loss and Destruction waiver at the price in effect, which Lessor reserves the right to change from time-to-time. Under the Loss and Destruction waiver, Lessor will waive Lessee's responsibility for loss or destruction of the Equipment and for keeping the Equipment fully insured during the term of this Lease. Such waiver will provide that Lessee will be responsible for the first $200 with respect to each claim. After the loss or destruction of the Equipment, Lessor will provide for its replacement with equipment of comparable value at that time to the extent that Lessee took reasonable care in preventing the loss or destruction of the Equipment.

## 11. DEFAULT.

If any one of the following events (each, an "Event of Default") shall occur, then, to the extent permitted by applicable law, Lessor shall have the right to exercise any one or more of the remedies set forth in Paragraph 12 below: (a) Lessee fails to pay any monthly lease or any other payment hereunder when due, and such failure continues for five (5) days or (b) Lessee or any guarantor becomes insolvent or makes an assignment for the benefit of creditors, or (c) a receiver, trustee, conservator or liquidator of Lessee or any guarantor of all or a substantial part of the assets of Lessee or any guarantor is appointed with or without the application or consent of Lessee or such guarantor, or (d) a petition is filed by or against Lessee or any guarantor under the Bankruptcy Code or any amendment thereto, or under any other insolvency law providing for the relief of debtors, or (e) Lessee admits, in writing, of its inability to pay its debts, or (f) any of Lessee's property is attached, or (g) any action is taken to dissolve or liquidate Lessee by Lessee or any of its shareholders, partners or members, or (h) Lessee fails to pay when due any obligation to Lessor arising independently of this Lease and such failure continues for five (5) days, or (i) Lessee breaches any other covenant, warranty or agreement hereunder, and such breach continues for ten (10) days after the earlier of (i) the date on which Lessee obtains, or should have obtained, knowledge of such breach, or (ii) the date on which notice thereof shall be given by Lessor to Lessee; or (j) Lessee conveys, sells, transfers or assigns substantially all of Lessee's assets or ceases doing business as a going concern, or (k) Lessee breaches any term or condition of any License governing the right to use the Software.

## 12. REMEDIES.

If an Event of Default shall occur as described in Paragraph 11 hereinabove, Lessor may, at its option, at any time and without notice (a) declare immediately due and payable and recover from Lessee, as liquidated damages for the loss of a bargain and not as a penalty, an amount equal to all accrued and unpaid monthly lease payments, late charges, collection costs, and interest, plus the Loss Amount as set forth in Section 9(b) hereinabove; (b) without demand or legal process enter into the premises where the Equipment may be found and take possession of and remove the Equipment or render it unusable without removal, without liability for such retaking. Lessee, shall, upon demand of Lessor, assemble the Equipment and deliver it as directed by Lessor. Lessee waives any right to recover the Equipment and for any loss of use after an Event of Default has occurred. With respect to any Software, Lessee shall cease to use such Software and will assemble and deliver to Lessor the same in electronic or other form. Lessee may remit to Lessor upon demand any amounts due and payable with respect to the licensing of the Software or the assignment thereof. Lessor may terminate any sub-license from Lessor to Lessee and may request the Vendor and/or the Licensor to terminate any licenses with the Lessee and all maintenance support or other services under the License. Lessee agrees that monetary damages are not a sufficient remedy and will not adequately compensate Lessor for Lessee's breach and that Lessor shall be entitled to seek specific performance or other injunctive or equitable relief. Lessor may hold, sell or otherwise dispose of any such Equipment at a private or public sale. In the event Lessor takes possession of the Equipment, Lessor shall give Lessee credit for any sums received by Lessor from the sale or rental of the Equipment after deduction of the expenses of sale or rental. Lessee shall pay all of Lessor's recovery costs after a default, including: (i) attorney's fees equal to twenty-five percent (25%) of the amount of Lessor's claim or $1,500, whichever is greater; (ii) reasonable attorney's fees for obtaining an order, writ or similar process to recover possession of the Equipment; (iii) costs of suit; (iv) $250.00 to cover Lessor's internal collection overhead; (v) $225.00 to cover Lessor's internal repossession and remarketing overhead if an internal repossession is made or attempted; and (vi) all other reasonable out-of-pocket costs. Lessor and Lessee acknowledge the difficulty in establishing a value for the unexpired lease term and owing to such difficulty agree that the provisions of this paragraph represent an agreed measure of damages and are not to be deemed a forfeiture or penalty. In the event Lessee has provided a security deposit to Lessor, Lessor shall have the right to apply the security deposit to reduce the amount Lessee owes pursuant to this paragraph. In the event Lessee pays all obligations under this Lease and returns the Equipment to Lessor in accordance with paragraph 16, Lessor will return any security deposit to Lessee. No interest will be paid on the security deposit. All remedies of Lessor hereunder are cumulative, are in addition to any other remedies provided for by law, and may, to the extent permitted by law, be exercised concurrently or separately. The exercise of any one remedy shall not be deemed to be an election of such remedy or to preclude the exercise of any other remedy. No failure on the part of Lessor to exercise and no delay in exercising any right or remedy shall operate as a waiver thereof or modify the terms of this Lease.

## 13. LATE PAYMENTS AND COLLECTION COSTS.

Whenever any monthly lease payment is not made by Lessee in full when due hereunder, Lessee agrees to pay to Lessor, as a late fee, an amount equal to fifteen percent (15%) of the full scheduled payment, but not less than five dollars ($5.00) and only to the extent allowed by law. Such amount shall be payable in addition to all amounts payable by Lessee as a result of exercise of any of the remedies herein provided. In addition, Lessee will pay all out-of-pocket costs relating to or resulting from the collection of the late payment including a processing charge of $20.00 for each returned check, rejected ACH charge or returned credit card charge; and all reasonable collection costs incurred by Lessor. Payments shall be applied to late fees and to processing charges first and then to Lease obligations until all funds have been exhausted.

## 14. ASSIGNMENT. NOTICE OF INTENDED ASSIGNMENT.

Lessor may, without notice to and without Lessee's consent, assign or transfer this Lease or any Equipment, rent or other sums due or to become due hereunder, and in such event Lessor's assignee or transferee shall have the rights, powers, privileges and remedies of Lessor hereunder. Lessee hereby acknowledges notice of Lessor's intended assignment of Lessor's interest in this Lease, and upon such assignment, Lessee agrees not to assert as against Lessor's assignee, any defense, set-off, recoupment, claim or counterclaim, that it may have against Lessor whether arising under this Lease transaction or otherwise. LESSEE SHALL NOT ASSIGN THIS LEASE, THE LICENSE OR THE EQUIPMENT OR ANY INTEREST HEREUNDER AND SHALL NOT ENTER INTO ANY SUBLEASE WITH RESPECT TO THE EQUIPMENT OR THE LICENSE COVERED HEREBY WITHOUT LESSOR'S PRIOR WRITTEN CONSENT AND IF LESSOR SHALL PERMIT ANY SUCH ASSIGNMENT BY LESSEE, THE ASSIGNEE SHALL, AS A CONDITION TO LESSOR'S GRANTING OF CONSENT TO SUCH ASSIGNMENT, ASSUME LESSEE'S OBLIGATIONS HEREUNDER IN WRITING, IN FORM AND SUBSTANCE SATISFACTORY TO LESSOR, BUT NO SUCH ASSIGNMENT SHALL RELEASE LESSEE FROM ANY OF LESSEE'S OBLIGATIONS HEREUNDER.

## 15. BUYOUT OPTION.

Upon expiration of the lease term and provided no Event of Default shall have occurred and be continuing, Lessee shall have the option to purchase on an AS-IS, WHERE-IS basis, not less than all of the Equipment (and an assignment of all of Lessor's rights, title and interest in the Software, if any) for its then fair market value, calculated as a percentage of the aggregate monthly lease payments in accordance with the following: If the term of this Lease is forty-eight (48) months or more, the buyout option as a percentage of the aggregate lease payments shall be ten percent (10%). If the term of this Lease is thirty-six (36) to forty-seven (47) months, the buyout option as a percentage of the aggregate lease payments shall be fifteen percent (15%). If the term of this Lease is twenty-four (24) to thirty-five (35) months, the buyout option as a percentage of the aggregate lease payments shall be twenty percent (20%). If the term of this Lease is twelve (12) to twenty-three (23) months, the buyout option as a percentage of the aggregate lease payments shall be twenty-five percent (25%). The exercise of this option must be communicated to Lessor in writing at least thirty (30) days prior to the expiration of the lease term. Purchase option payment will be due at lease expiration.

Lessee Initials

## RETURN OF PROPERTY.

Lessee will notify Lessor in writing, at least 30 days prior to the Lease expiration, of Lessee's intention to return the Equipment. Within 10 days following the expiration of the Lease, Lessee shall deliver, freight prepaid, the Equipment to Lessor, at its address set forth above, complete and in good order and working condition, reasonable wear and tear alone excepted. Lessee shall assemble and deliver to Lessor all Software in electronic or other form as directed by Lessor. If any Software requires re-licensing, Lessee shall bear all costs related thereto and shall execute such documents as may be required. Lessee shall also pay to Lessor such sum as may be necessary to cover replacement for all damaged, broken or missing parts of the Equipment. If, upon such expiration or termination, Lessee does not return the Equipment to Lessor within ten (10) days after the expiration or termination of the term of the Lease, the Equipment shall continue to be held and leased hereunder and this Lease shall thereupon be extended on a month-to-month basis at the same monthly rental and upon the same terms and conditions set forth herein, subject to the right of either Lessee or Lessor to terminate the Lease upon one month's written notice, whereupon Lessee shall forthwith deliver the Equipment to Lessor as set forth in this Paragraph. If Lessee paid the last monthly lease payment at the time of the execution of this Lease, such payment shall be applied (without interest) to the last monthly lease payment upon the return by Lessee of the Equipment provided that no other sums are owing by Lessee to Lessor hereunder, in which event Lessor may apply such payment to any amount outstanding hereunder.

## 17. EFFECTIVE DATE.

This Lease shall become valid when executed and accepted by Lessor, notice of Lessor's acceptance of this Lease being hereby waived by Lessee.

## 18. GOVERNING LAW.

THIS LEASE AND ANY GUARANTY HEREOF SHALL BE INTERPRETED AND CONSTRUED IN ACCORDANCE WITH, AND GOVERNED BY, THE INTERNAL LAWS OF THE STATE AND CITY OF NEW YORK.

## 19. CHOICE OF FORUM FOR RESOLUTION OF DISPUTES.

AS USED IN THIS PARAGRAPH 19, "APPLICABLE JURISDICTION" MEANS THE COUNTY OF NEW YORK, STATE OF NEW YORK AND CITY OF NEW YORK, OR SUCH OTHER COUNTY, STATE OR CITY, AS THE SAME MAY CHANGE FROM TIME TO TIME, WHERE THE HOLDER OF LESSOR'S INTEREST IN THIS LEASE MAINTAINS ITS PRINCIPAL OFFICE RESPONSIBLE FOR ADMINISTRATING THIS LEASE. ALL ACTIONS, PROCEEDINGS OR LITIGATION BROUGHT BY LESSOR OR LESSEE OR ANY GUARANTOR SHALL BE INSTITUTED AND PROSECUTED IN THE APPLICABLE JURISDICTION. THE PARTIES ACKNOWLEDGE THEIR AGREEMENT THAT THE STATE COURTS SITTING IN THE APPLICABLE JURISDICTION SHALL BE THE EXCLUSIVE FORUM FOR ALL ACTIONS; PROCEEDINGS OR LITIGATION BETWEEN OR AMONG THE PARTIES, NOTWITHSTANDING THAT OTHER COURTS MAY HAVE JURISDICTION OVER THE PARTIES AND THE SUBJECT MATTER; PROVIDED, HOWEVER, THAT ANY ACTION OR PROCEEDING BY LESSOR TO RECOVER POSSESSION OF THE EQUIPMENT (WHETHER DENOMINATED AS A REPLEVIN, SEQUESTRATION CLAIM AND DELIVERY OR OTHERWISE) MAY BE BROUGHT IN ANY COUNTY WHERE THE EQUIPMENT MAY BE FOUND. LESSEE AND GUARANTOR AGREE THAT ANY SUMMONS AND/OR COMPLAINT OR OTHER PROCESS TO COMMENCE ANY LITIGATION BY LESSOR WILL BE PROPERLY SERVED IF MAILED BY CERTIFIED MAIL, RETURN RECEIPT REQUESTED, WITH DELIVERY TO EITHER GUARANTOR, LESSEE OR LESSEE'S REGISTERED AGENT.

## 20. WAIVER OF JURY TRIAL.

LESSEE AND ANY GUARANTOR WAIVE, INSOFAR AS PERMITTED BY LAW, TRIAL BY JURY IN ANY ACTION, PROCEEDING OR LITIGATION BETWEEN OR AMONG LESSOR, LESSEE OR ANY GUARANTOR.

## 21. SUBORDINATION.

All indebtedness, now existing or hereafter arising, between Lessee and any guarantor is hereby subordinated to all present and future obligations of Lessee or any guarantor to Lessor, including, but not limited to, the Lease obligations, and, after the occurrence of an Event of Default, no payment shall be made or accepted on any such indebtedness due Lessee or any guarantor until all such obligations to Lessor are paid and satisfied in full.

## 22. SURVIVAL OF GUARANTY OBLIGATIONS.

All obligations of any guarantor shall remain enforceable notwithstanding that this Lease, or any obligations performed hereunder, may be void or voidable as against Lessee or any Lessee's creditors, including, but not limited to, a trustee in bankruptcy, by reason of any fact or circumstance.

## 23. MISCELLANEOUS.

This Lease contains the entire agreement between the parties and may not be altered, amended, modified, terminated or otherwise changed including by prior, contemporaneous or subsequent oral agreements, except in writing signed by an executive officer of Lessor. Lessee certifies that no such oral agreements exist. Lessor and Lessee intend this to be a valid and subsisting legal document, and agree that no provision of this Lease which may be deemed unenforceable shall in any way invalidate any other provision or provisions of this Lease, all of which shall remain in full force and effect. The undersigned certifies that he/she is authorized to execute this Lease on behalf of Lessee. Any notice intended to be served hereunder shall be deemed sufficiently sent if sent by regular mail, postage prepaid, addressed to the party at the addresses contained hereon. This Lease shall be binding upon the parties, their successors, legal representatives and assigns. All captions are intended to be descriptive only and shall not govern the Lease provisions.

## 24. WAIVER; SEVERABILITY.

No delay by Lessor in enforcing any rights under this Lease shall be interpreted as a waiver of said rights. If any provision of this Lease or the application thereof to any person, business entity, or circumstance is determined to be invalid, the remainder of this Lease, or the application of such provisions to any person, business entity or circumstances other than those to which it is held invalid, shall not be affected thereby.

---

### DEALER'S BILL OF SALE:

For good and valuable consideration, the receipt of which is hereby acknowledged, the undersigned hereby sells, assigns, transfers and sets over the Equipment to Northern Leasing Systems, Inc.. The undersigned represents and warrants to Lessor that the undersigned is the absolute owner of the Equipment, that the Equipment is free and clear of all liens, charges and encumbrances, and that the undersigned has full right, power and authority to make this bill of sale.

Seller: _Quality Merchant Service_ Dated: _3-16-05_

By: _[signature]_

Title: _Owner_

---

Lessee Initials _[handwritten]_

# EXHIBIT B

# QMS / Quality Merchant Services

*Defining The Future of Transaction Automation.*
*All the latest technology in Credit Card, Debit Card and Check Services Available*

MID _____ Auth # _____ Table _____ Rep # _____ Agent ID **1094**

SIC _____ Assoc. _____ Referred By _____

☐ New Application ☐ Additional Location ☑ New Ownership

## BUSINESS NAME(S)

**Business LEGAL Name:**

**Business Name/DBA Name:** Tisa's Cake

**Location Address:** 716 S. Randolph Ave

**City, State, Zip:** Eufaula AL 36027

**Contact Name:** Letecia Greene

**Phone Number:** 334-616-7771   **Fax Number:**

**Mailing/Billing Address (if different from above):**

**City, State, Zip:**

**Contact Name:**

**Phone Number:**   **Fax Number:**

## MERCHANT PROFILE ("Business")

**URL:**

**E-MAIL:**

**Business Open Date** MO. 10 YR. 09 **Length of Current Ownership** 34m

**Location (e.g. 3 of 5):** 1 of 1

**Expected Card Sales ($):** Mo. 2000 YR. 24000   **Avg. Tkt.** $35 00   **Max Tkt.** $500 00

**Type of Business (Circle One):** (Retail) MTO E-COM   **Type of Goods/Services Sold:** Cakes

**Current Processor, if applicable:** Compass Bank   **Seasonal Sales** N-A   **High Vol. Months** N-A

**Method of Sales:**
Card Present 100 %   Card Swiped 100 %   B-2-C 100 %
Card Not Present ___ %   Not Swiped ___ %   B-3-B ___ %
TOTAL 100 %   TOTAL 100 %   TOTAL 100 %

**Notes:** Very nice Location

## OWNERSHIP INFORMATION

**Ownership Type:**
☑ Sole Prop.   ☐ Partnership   ☐ Corporation   ☐ Other: _____

**Federal Tax ID # (9 digits):**

**Owner 1/Partner/Officer Name:** Letecia Greene   **Title in Business:** owner   **Equity Ownership:** 100 %   **Social Security #:**   **D.O.B.:**

**Home Address:** 131 Twin Lakes rd   **City, State, Zip:** Eufaula AL 36027   **Phone Number:** 334-688-5004

**Owner 2/Partner/Officer Name:**   **Title in Business:**   **Equity Ownership:**   **Social Security #:**   **D.O.B.:**

**Home Address:**   **City, State, Zip:**   **Phone Number:** ( )

## MERCHANT TRADE REFERENCES

**Trade Reference 1 Name:** Glover   **Contact:** Allyou c   **Phone Number:** 706 322 7376   **Account #:**

**Trade Reference 2 Name:**   **Contact:**   **Phone Number:** ( )   **Account #:**

## LEASE/INSURANCE PROFILE

**Insurance Co.:**   **Notes:**

**Policy #:**   **Notes:**

**Agent:**   **Notes:**

**Phone #:**   **Notes:**

| | | | | | |
|---|---|---|---|---|---|
| Qualified Rate | 1.75 | % | Voice Authorization | $ | 1.50 |
| Mid-Qualified Rate | 2.75 | % | Return/Chargeback Fee | $ | 25.00 |
| Non-Qualified Rate | 2.75 | % | Equipment Fee | $ | |
| Monthly Minimum | $ | | E-commerce Fee | $ | |
| Visa-MasterCard Auth Fee | $ | .00 | | | |
| T&E Auth. Fee | $ | .00 | Customer Service Fee | $ | 5.00 |
| Debit Auth. Fee | $ | .00 | | | |
| Debit Access Fee | $ | | Premier Club Fee | $ | |
| Monthly Wireless | $ | | Wireless Auth. Fee | $ | .00 |

Each rate category has a number of business and processing requirements that must be satisfied, qualified transactions are required to be electronically authorized, output and closed daily. Mid-Qualified transactions are manually keyed transactions that meet all retail order-telephone order-data requirements (among them are Address Verification (AVS), CVO (V-Code), invoice number, order date, and accounting codes) including being closed daily. Non-Qualified transactions are those who fail to meet the requirements listed under the Qualified or Mid-Qualified categories or are issued by a non-U.S. bank. *The above prices and fees only apply to transactions acquired in the U.S. region that are initiated with a U.S. issued Visa or MasterCard.*

### ELECTRONIC DEBIT (ACH) AUTHORIZATION

Merchant hereby authorizes acquiring Bank and Online Data Corp, in accordance with this Agreement, to initiate debit/credit entries to Merchant's deposit account, as indicated below. This authority is to remain in full force and effect until (i) Bank and Online Data Corp. have received written notification from Merchant of its termination, in such a manner as to afford Bank and Online Data Corp. reasonable opportunity to act on it and (ii) all obligations of Merchant to Bank and Online Data Corp. that have arisen under this Agreement have been paid in full.

### PLEASE NOTE: A VOIDED BUSINESS CHECK MUST ACCOMPANY THIS APPLICATION

Bank Name: Compass Bank

Address: Eufaula          Eufaula          AL     36027

Transit Routing #: 062001186          DDA/ACCT #: 21020516

### IMPORTANT NOTICE

The undersigned Applicant/Merchant ("Applicant"), and each of them, if more than one, acknowledges and agrees that the MERCHANT PROCESSING AGREEMENT (includes the attached Merchant Application) which is integrated herein and made a part hereof, together (hereinafter referred to as the "Merchant Agreement") shall not take effect until Applicant has been approved by Bank and iPayment and Applicant is assigned and issued a Merchant Account Number. Any alteration, deletions, or modification to the preprinted text of this Merchant Agreement shall be of no effect whatsoever and at Bank's and iPayment's discretion may render this Merchant Agreement invalid. Applicant warrants and certifies that all information submitted under this Merchant Agreement (including the Merchant Application section) is true, correct, and complete and understands that Bank and iPayment will be relying on such information during the approval process, including in setting the applicable fees, rates, limits and all other terms and conditions. Acceptance of Card Transactions by Applicant under an approved Merchant Account requires establishment Applicant's agreement of all the Bank approved fees, charges, rates, limits and other terms and conditions of this Merchant Agreement, including any and all combined terms, if any, required by Bank and iPayment for final approval. By signing below, the undersigned Applicant (and each of them) hereby authorizes Bank and/or iPayment to obtain from third parties financial and credit information relating to Applicant in connection with their determination of whether to accept this Merchant Agreement and hereby grants Bank and/or iPayment continuing authority to conduct credit checks and background investigations and inquiries concerning each of the undersigned including, but not limited to, financial, character and business references and Applicant's owner(s) (if Applicant is an entity). Each of the undersigned expressly authorizes Bank and/or iPayment to request and obtain from Consumer Reporting Agencies (Bureaus) consumer and business reports. Each of the undersigned furthermore agrees that all references, including banks and Consumer Reporting Agencies, may release any and all personal and business profit and financial information to Bank and/or iPayment.

IN WITNESS WHEREOF, the undersigned Applicant has duly executed this Merchant Agreement as of the date(s) indicated below, and hereby confirms that Applicant has received a completed copy of this Merchant Agreement consisting of pages one (1) through nine (9) (including the Merchant Application), has read and understands the foregoing terms and conditions and hereby agrees to all of the terms and conditions of this Merchant Agreement.

Applicant/Merchant Legal Name: Letecia Greene          Date: 3-16-05

Applicant/Merchant DBA Name: Tisa's Cakes / Letecia Greene owner

Authorized Signature: _____          Date: ___

Address: 716 S. Randolph Ave          Print Name: Letecia          Title:

City: Eufaula AL 36027          State          Zip Code

APPROVED/ACCEPTED: Date: ___
By: ___
JPMorgan Chase Bank, 100 Duffy Avenue, Hicksville, NY 11801

APPROVED/ACCEPTED: Date: ___
By: ___
iPayment, Inc., 40 Burton Hills, Suite 415, Nashville, TN 37215

### PERSONAL GUARANTY

CONTINUING PERSONAL GUARANTY PROVISION - PERSONAL GUARANTOR(S)

The undersigned "Guarantor(s)" (jointly and severally, if more than one) acknowledges and agrees that this Continuing Personal Guaranty Provision is made in reference to and is made part of the MERCHANT PROCESSING AGREEMENT to which it is incorporated (the "Merchant Agreement"). In consideration of Bank's and iPayment's acceptance of the Merchant Agreement and to induce Bank and iPayment to approve the above referenced Applicant's ("Applicant") request for approval of the Merchant Agreement, the undersigned "Guarantor(s)", unconditionally guarantees the performance of all obligations of Applicant to Bank and iPayment under the Merchant Agreement and payment of all sums due from Applicant thereunder as the Merchant Agreement now exists or as it may be amended from time to time, whether before or after termination or expiration, and whether or not the undersigned Guarantor(s) has/have received any notice of any amendment, and if any event of Default shall occur under the Merchant Agreement, the undersigned Guarantor(s) hereby waives notice of default and agrees to pay Bank and iPayment for any and all amounts due from Applicant and to perform any other obligations of Applicant pursuant to the terms of Merchant Agreement. Bank and/or iPayment may proceed directly against the undersigned Guarantor(s), and each of them, without first exhausting its/their remedies against Applicant and/or any other person or entity responsible to Bank and iPayment, or any entity held by Bank and/or iPayment. The undersigned acknowledges that this GUARANTY is a continuing guaranty and shall not be affected by the release or discharge of Applicant. To the fullest extent permissible under applicable law, Guarantor(s) waives any and all rights of subrogation, reimbursement or indemnity derived from Applicant and all other rights and defenses available to Guarantor(s), and further waives any and all rights or defenses arising by reason of any modification to or change in the terms of this Merchant Agreement whatsoever, including, without limitation, renewal, extension, acceleration, or other change in the term or any payment or other performance thereunder is due, and/or any change in any rates, limits, charges or fees thereunder. Guarantor(s) unconditionally and specifically authorizes Bank and/or iPayment to debit any amounts for obligations due under the Merchant Agreement and/or this GUARANTY from any personal checking account or other account owned or controlled by Guarantor(s), and each of them, and further to report any default hereof on Guarantor's/Guarantors' personal Credit Bureau Reports. Guarantor(s) agrees to pay all costs and expenses of whatever nature, including reasonable attorney's fees and other legal expenses, incurred by or on behalf of Bank and/or iPayment in connection with the enforcement of this GUARANTY. By signing below the undersigned Guarantor(s), and each of them, hereby authorizes Bank and/or iPayment to obtain from third parties financial and credit information relating to Guarantor(s) and hereby grants to Bank and/or iPayment continuing authority to conduct credit checks and background investigations and inquiries concerning each of the undersigned. Each of the undersigned Guarantors, expressly authorizes Bank and/or iPayment to request and obtain from Consumer Reporting Agencies (Bureaus) consumer and business reports and if Applicant is approved, to obtain subsequent consumer and business credit reports in connection with the maintenance, updating, renewal or extension of the Merchant Agreement. Each of the undersigned furthermore agrees that all references, including banks and Consumer Reporting Agencies, may release any and all personal and business credit and financial information to Bank and/or iPayment.

Signature: Letecia Greene          An Individual          Print Name: Letecia Greene          Date: 3-16-05

Signature: ___          An Individual          Print Name: ___          Date: ___

White - Bank Copy          Yellow - Office Copy          Pink - Merchant Copy

Online Data Corp. is a wholly owned subsidiary of iPayment, Inc., a registered ISO/MSP of JPMorgan Chase Bank, Hicksville, New York          Page 7 of 3          Revision 0503

## TERMINAL AND PROGRAMMING SPECIFICATIONS

| Software/Equipment Type | Quantity | Ownership Category | | | T.I.D. |
|---|---|---|---|---|---|
| | | REPRO | PURCHASE | LEASE | |
| | | REPRO | PURCHASE | LEASE | |
| | | REPRO | PURCHASE | LEASE | |

Phone System: Dial 9 ☐  Call Waiting ☐  Splitter Needed  Yes ☐  No ☐

IMPRINTER PURCHASE:  Reg _____  Mini _____  Plate Quantity _____

## SERVICE CATEGORY

- ☒ Retail
- ___ Service
- ___ Restaurant
- ___ Hotel
- ___ Cash Advance
- ___ Retail w/Tips
- Other _____
- ___ _____

- ___ Mail Telephone Order
- ___ Internet
- ___ Purchasing/Procurement
- ___ AVS
- ___ CVV2/CVC2

## SOFTWARE REQUIREMENTS

# Additional I.D. #'s _____

# Concurrent Users _____

Network Version _____

Connection Types (Check One)
  Modem ☐  TCP/IP ☐
  DSL ☐  Other _____

Notes:

## WIRELESS COVERAGE

(Choose one):  ☐ Motient  ☐ Ramm

Ramm Reprogram:

Man. #: _____  ESN# _____

Motient Reprogram:

LLI #: _____  ESN# _____

## INTERNET SPECIFICATIONS

Online Data Store Builder:  ☐ Yes  ☐ No

Shopping Cart Software:

Gateway Provider:

Register Agent:

Phone #: ( )

## INSTALLATION ASSIGNMENT

Rep. to Do Install  ☒ Yes  ☐ No  Rep. Supplying Equipment  ☒ Yes  ☐ No  Date Needed By _____

Comments:

## FOR OFFICE USE ONLY

AX  [N/A]

ESA/Apply ☐    SPLIT DIAL ☐

DISCVR  [N/A]

R.A.P/Apply ☐

DC

CR

JCH

CHECK PROVIDER _____

CHECK

DEBIT CO.

DEBIT

### SITE INSPECTION INFORMATION *To Be Completed By Sales Rep*

Does Business Appear Legitimate:  ☒ Yes  ☐ No

Is Inventory Sufficient for Business Type:  ☒ Yes  ☐ No

Comments: *Nice Cakes*

Is Business Open and Operating:  ☒ Yes  ☐ No

Are decals displayed:  ☐ Yes  ☒ No

Are Goods and Services Delivered at Time of Sale:  ☒ Yes  ☐ No

Any Mail or Telephone Order Sales Activity:  ☐ Yes  ☒ No

By the signature below, signatory verifies that (i) she/he verified the legitimacy of the business; and that (ii) the information stated in this agreement is correct to the best of her/his knowledge and is as represented to her/him by MERCHANT.

Sales Representative Signature: _____

Sales Representative Name (Please Print): *Teri Radtke*

Sales Organization: Online Data Corp.    DATE: 3-16-05

White - Bank Copy     Yellow - Office Copy     Pink - Merchant Copy

Online Data Corp., is a wholly owned subsidiary of iPayment, Inc., a registered ISO/MSP of JPMorgan Chase Bank, Hicksville, New York

Page 3 of 3.     Revision 0503

TIME : 12/29/2009 20:07
NAME :
FAX :
TEL :
SER.# : C8J644143

DATE,TIME         12/29  19:53
FAX NO./NAME      12122534272
DURATION          00:13:30
PAGE(S)           29
RESULT            OK
MODE              STANDARD
                  ECM

✎JS 44 (Rev. 12/07)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

L. GREENE d/b/a TISA'S CAKES

## DEFENDANTS

NORTHERN LEASING SYSTEMS, INC.; ONLINE DATA CORPORATION; and iPAYMENT, INC.

**(b)** County of Residence of First Listed Plaintiff  Barbour County, AL
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant   New York County, NY
(IN U.S. PLAINTIFF CASES ONLY)
NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

REESE RICHMAN LLP, 875 6th Avenue, 18th Floor, NY, NY 10001

Attorneys (If Known)

## II. BASIS OF JURISDICTION   (Place an "X" in One Box Only)

❏ 1  U.S. Government
Plaintiff

❏ 3  Federal Question
(U.S. Government Not a Party)

❏ 2  U.S. Government
Defendant

☒ 4  Diversity
(Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff
(For Diversity Cases Only)                    and One Box for Defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ❏ 1 | ☒ 1 | Incorporated or Principal Place of Business In This State | ❏ 4 | ☒ 4 |
| Citizen of Another State | ☒ 2 | ☒ 2 | Incorporated and Principal Place of Business In Another State | ❏ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ❏ 3 | ☒ 3 | Foreign Nation | ❏ 6 | ☒ 6 |

## IV. NATURE OF SUIT   (Place an "X" in One Box Only)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ❏ 110 Insurance | **PERSONAL INJURY** | ❏ 610 Agriculture | ❏ 422 Appeal 28 USC 158 | ❏ 400 State Reapportionment |
| ❏ 120 Marine | ❏ 310 Airplane | ❏ 620 Other Food & Drug | ❏ 423 Withdrawal | ❏ 410 Antitrust |
| ❏ 130 Miller Act | ❏ 315 Airplane Product Liability | ❏ 625 Drug Related Seizure of Property 21 USC 881 | 28 USC 157 | ❏ 430 Banks and Banking |
| ❏ 140 Negotiable Instrument | **PERSONAL INJURY** | ❏ 630 Liquor Laws | | ❏ 450 Commerce |
| ❏ 150 Recovery of Overpayment & Enforcement of Judgment | ❏ 320 Assault, Libel & Slander | ❏ 362 Personal Injury - Med. Malpractice | ❏ 640 R.R. & Truck | **PROPERTY RIGHTS** | ❏ 460 Deportation |
| ❏ 151 Medicare Act | ❏ 330 Federal Employers' Liability | ❏ 365 Personal Injury - Product Liability | ❏ 650 Airline Regs. | ❏ 820 Copyrights | ❏ 470 Racketeer Influenced and Corrupt Organizations |
| ❏ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ❏ 340 Marine | ❏ 368 Asbestos Personal Injury Product Liability | ❏ 660 Occupational Safety/Health | ❏ 830 Patent | ❏ 480 Consumer Credit |
| ❏ 153 Recovery of Overpayment of Veteran's Benefits | ❏ 345 Marine Product Liability | **PERSONAL PROPERTY** | ❏ 690 Other | ❏ 840 Trademark | ❏ 490 Cable/Sat TV |
| ❏ 160 Stockholders' Suits | ❏ 350 Motor Vehicle | ❏ 370 Other Fraud | | | ❏ 810 Selective Service |
| ☒ 190 Other Contract | ❏ 355 Motor Vehicle Product Liability | ❏ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ❏ 850 Securities/Commodities/ Exchange |
| ❏ 195 Contract Product Liability | ❏ 360 Other Personal Injury | ❏ 380 Other Personal Property Damage | ❏ 710 Fair Labor Standards Act | ❏ 861 HIA (1395ff) | ❏ 875 Customer Challenge 12 USC 3410 |
| ❏ 196 Franchise | | ❏ 385 Property Damage Product Liability | ❏ 720 Labor/Mgmt. Relations | ❏ 862 Black Lung (923) | ❏ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ❏ 730 Labor/Mgmt.Reporting & Disclosure Act | ❏ 863 DIWC/DIWW (405(g)) | ❏ 891 Agricultural Acts |
| ❏ 210 Land Condemnation | ❏ 441 Voting | ❏ 510 Motions to Vacate Sentence | ❏ 740 Railway Labor Act | ❏ 864 SSID Title XVI | ❏ 892 Economic Stabilization Act |
| ❏ 220 Foreclosure | ❏ 442 Employment | **Habeas Corpus:** | ❏ 790 Other Labor Litigation | ❏ 865 RSI (405(g)) | ❏ 893 Environmental Matters |
| ❏ 230 Rent Lease & Ejectment | ❏ 443 Housing/ Accommodations | ❏ 530 General | ❏ 791 Empl. Ret. Inc. Security Act | **FEDERAL TAX SUITS** | ❏ 894 Energy Allocation Act |
| ❏ 240 Torts to Land | ❏ 444 Welfare | ❏ 535 Death Penalty | | ❏ 870 Taxes (U.S. Plaintiff or Defendant) | ❏ 895 Freedom of Information Act |
| ❏ 245 Tort Product Liability | ❏ 445 Amer. w/Disabilities - Employment | ❏ 540 Mandamus & Other | ❏ 462 Naturalization Application | ❏ 871 IRS—Third Party 26 USC 7609 | ❏ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ❏ 290 All Other Real Property | | ❏ 550 Civil Rights | ❏ 463 Habeas Corpus - | | |