## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

L. GREENE d/b/a TISA'S CAKES,

Plaintiff,

v.

ONLINE DATA CORPORATION and
iPAYMENT, INC.

Defendants.

Civil Action No. 1:09-cv-05679-RJD-SMG

**FIRST AMENDED
CLASS ACTION COMPLAINT AND
DEMAND FOR JURY TRIAL**

Plaintiff Letecia Greene d/b/a Tisa's Cakes ("Plaintiff"), individually and on behalf of

others similarly situated, complains against Defendants Online Data Corporation ("Online Data")

and iPayment, Inc. ("iPayment") (collectively, "Defendants"), upon personal knowledge as to

itself and own acts, and as to all other matters upon information and belief, based upon, *inter*

*alia*, the investigation made by its attorneys, as follows:

### OVERVIEW OF THE ACTION

1.    Plaintiff brings this action individually and on behalf of a proposed class of

entities that were injured by Defendants' business acts and practices in charging cancellation

fees.

2.    The proposed class/es consist of all entities who entered into Agreements with

Online Data for electronic payment processing services pursuant to contracts that include an

early termination fee provision (also called an Early Termination Fee or Early Cancellation Fee,

collectively, "ETF") or who have paid or been charged an ETF by Defendants.

3.    Through a uniform scheme and common course of conduct, Defendants charged

Plaintiff and the putative Class ETFs of $350.00 if they cancelled their electronic payment

processing subscription at any time before the end of the Merchant Agreement, regardless of the reason(s) for cancellation.

4.     The amount of the ETF imposed does not vary during the term of the service plan. The customer is required to pay the full ETF whether he or she cancels five (5) weeks after the Merchant Agreement goes into effect or one day before it expires. Defendants impose the full $350 charge even though, by the terms of the contract itself, Defendants are to reduce the ETF to $250 after the first year of the three year contract has expired.

5.     As alleged herein, Defendants' conduct gives rise to Plaintiff's claims for: (1) unjust enrichment; and (2) Declaratory Relief pursuant to 28 U.S.C. § 2201.

## JURISDICTION AND VENUE

6.     This Court has jurisdiction pursuant to 28 U.S.C. § 1332(d). This is a class action involving more than 100 class members. At least one member of the class is a citizen of a State different from defendants, and the amount in controversy, in the aggregate, exceeds the sum of $5,000,000.00 exclusive of interest and costs.

7.     Venue is proper under 28 U.S.C. § 1391. Defendant Online Data resides in this District, conducts substantial business in this District, and has received substantial compensation in this District.

## PARTIES

8.     Plaintiff Tisa's Cakes is a sole proprietorship owned by Ms. Letecia Greene with its principal place of business in Eufaula, Barbour County, Alabama.

9.     Defendant Online Data Corporation is a wholly owned subsidiary of iPayment, Inc., a registered ISO/MSP of JPMorgan Chase Bank, Hicksville, New York. iPayment, Inc. is a foreign corporation with its principal place of business in Tennessee.

-2-

## FACTS
## Early Termination Fees

10.     Defendants offer to the public credit card processing services through a service lease ("Merchant Agreement") which governs the fees billed to the customer for each credit card transaction processed by the Defendants.

11.     The Merchant Agreements are standardized forms that are not subject to modification or negotiation. Defendants present these Merchant Agreements to prospective subscribers on a "take it or leave it" basis. These Merchant Agreements are contracts of adhesion.

12.     These Merchant Agreements contain a choice of law clause stating that they are to be governed by the laws of the State and City of New York.

13.     The Merchant Agreement refers to a "MERCHANT PROCESSING AGREEMENT", which was never provided to Plaintiff at the time of rental. The charged Early Termination Fee is included in this document, which Plaintiff believes, as a common business practice, is never provided to Defendants' customers, including Plaintiff.

14.     Plaintiff subsequently obtained a copy of the Merchant Processing Agreement from Defendants, which states that the ETF provision is as follows. See Exhibit A at 4 (emphasis added):

2. TERM. [ . . . ] Notwithstanding anything in this Merchant Agreement to the contrary, the parties hereby further agree and acknowledge that in addition to any other remedies contained in this Merchant Agreement or otherwise available under applicable law, if (a) Merchant breaches this Merchant Agreement by improperly terminating it prior to the expiration of the Initial Term; or (b) if this Merchant Agreement is terminated by Bank and iPayment prior to the expiration of the Initial Term due to any Event of Default by Merchant, then in either event, Bank and iPayment will suffer a substantial injury that is difficult or impossible to accurately estimate. Accordingly, after giving due consideration to the costs that Bank and iPayment may incur by reason of such early termination, including without limitation those incurred in processing the Merchant Application and

-3-

approving Merchant for the Services, and in an effort to liquidate in advance the sum that should represent such damages, the parties have agreed that Merchant shall pay, as liquidated damages the sum of **(i) $350.00 if terminated before completion of the first year of the Initial Term; or (ii) $250.00 if terminated after completion of the first year of the Initial Term but prior to the end of year two or three of the Initial Term,** which the parties agree is a reasonable pre-estimate of the probable loss to Bank and iPayment in such event, and shall not be construed as a penalty. Merchant's obligation with respect to the Monthly Minimum Discount Fee

15. The ETF charged to Plaintiff was $350.00, even though under the terms of the agreement, she should only have been charged $250.00.

16. On information and belief, Defendants charge all customers $350.00, regardless of when the Agreement is terminated.

17. On information and belief, the customer must pay the ETF even if cancellation is the result of non-existent, poor, or otherwise inadequate service, all of which is reflected in Defendants' business records.

18. On information and belief, the ETF is also due if Defendants unilaterally terminate the Merchant Agreement for, among other things, nonpayment by the customer.

19. The ETF is not a reasonable measure of the anticipated or actual loss that the termination causes to Defendants and, thus, is an unlawful penalty.

20. The ETF is not designed to compensate Defendants for damages arising from the early termination, but rather is designed to serve as a disincentive for customers to switch to competing services in the event that they become dissatisfied with the services provided by Defendants.

21. If and to the extent that Defendants suffer any damage upon early termination of a customer's contract, it is neither impracticable nor extremely difficult to calculate the actual damage. Further, if and to the extent Defendants suffer any damage upon early termination of a

-4-

service contract, the flat-fee early termination charge of $350.00 or $250.00 is not a reasonable measure or estimation of such damages.

22. This ETF is a liquidated damages clause, which is an illegal penalty when damages are readily calculable, as they are here, and when the charge bears no reasonable relationship to the anticipated harm in the event of a breach by the other party. The ETF is neither designed, nor intended to compensate Defendants for any damages arising from early termination, but has the effect and purpose of locking in subscribers and discouraging them from switching to competing services (what is known as "churn").

23. Defendants' ETF stifles competition in the electronic payment processing industry by preventing merchants from freely shopping around for the best service.

24. Plaintiff is informed and believes that the early termination penalty provisions have permitted Defendants to collect revenues and generate enormous profits as a result of: (a) the payment of the early termination penalties; and (b) the revenue generated by tethering Plaintiff to service for at least the original contract period, and, in most cases, for additional years.

## Facts As To Named Plaintiff

25. On March 16, 2005, Mr. Jeri Radtke, a salesman with Quality Merchant Services ("QMS"), visited Ms. Letecia Greene at her store, Tisa's Cakes, to offer her a lease on a credit card processor. Plaintiff signed a credit card processing agreement with Online Data (attached as Exhibit B).

26. In or around March 2008, Plaintiff subscribed to a new credit card processing service and her service with Online Data was cancelled.

27.     On April 21, 2008, even though Plaintiff cancelled her contract in the third year, with less than one month remaining, Online Data debited $350.00 from Plaintiff's bank account, for a purported "Cancel Fee."

28.     Online Data did not provide Plaintiff with a document establishing a basis for the "Cancel Fee."

29.     Online Data could have easily ascertained the actual damages, if any, it incurred when Plaintiff cancelled its Lease, but it did not. Instead, it imposed an illegal penalty.

## APPLICATION OF NEW YORK LAW

30.     Section 28 of the Agreement contains a "Governing Law" provision where the parties agreed that the Agreement would be governed by New York law

31.     Defendants' relevant business, including the formulation and execution of the unlawful practices alleged herein, occurred in, or emanated from New York, Defendant's principal place of business. Accordingly, New York has significant contacts and/or a significant aggregation of contacts to the claims asserted by Plaintiff and Class.

32.     New York has a materially greater interest than any other State in regulating unlawful conduct by Defendants, which conducted its unlawful practices out of its principal place of business in New York. These rights and remedies further fundamental public policies of the State of New York.

## CLASS ACTION ALLEGATIONS

### A.     Definition of the Class

33.     Plaintiff brings this action on its own behalf and as a Class Action pursuant to Rules 23(b)(2) and 23(b)(3) of the Federal Rules of Civil Procedure on behalf of the following proposed "Class" or "Class Members":

-6-

All Subscribers Class:

All subscribers to Online Data's electronic payment processing services pursuant to contracts which include an Early Termination Fee provision.

All Subscribers Charged an ETF Class:

All subscribers who Online Data charged an Early Termination Fee.

34. The classes may be modified pending discovery. Excluded from the ETF Classes are members of the judiciary, Defendants, any entity in which it has a controlling interest, and its officers and directors and the members of their immediate families.

**B. Numerosity**

35. At this time, Plaintiff does not know the exact size of the ETF Classes; however, due to the nature of the trade and commerce involved, Plaintiff believes that members of the ETF Classes are so numerous that joinder of all members is impracticable. The number of class members can be determined through appropriate discovery.

**C. Commonality and Predominance**

36. There are questions of law or fact common to the ETF Classes, including at least the following:

(a) Whether the ETF is unjust, unreasonable, and/or unlawful;

(b) Whether Defendants charged ETF Class Members ETFs;

(c) Whether the ETF is unjust, and/or unlawful;

(d) Whether Defendants' conduct constitutes deceptive, unfair and/or oppressive conduct;

(e) Whether Defendants are/were unjustly enriched;

(f) Whether Declaratory Relief is appropriate; and

-7-

(g)     Whether Plaintiff and the ETF Class Members have been damaged, and if so, the proper measure of such damages.

37.     The above common questions predominate over questions affecting only individual members of the ETF Classes.

**D.     Typicality**

38.     Plaintiff has the same interests in this matter as all other members of the ETF Classes, and their claims are typical of all members of the class.

**E.     Adequacy**

39.     Plaintiff is committed to pursuing this action and has retained competent counsel experienced in the prosecution and successful resolution of consumer class actions. Plaintiff will fairly and adequately represent the interests of ETF Class Members and does not have interests adverse to the ETF Classes.

**F.     Superiority**

40.     A class action is the superior method for fair and efficient adjudication of the controversy. The likelihood that individual ETF Class Members will prosecute separate actions is remote due to the extensive time and considerable expense necessary to conduct such litigation, especially in view of the relatively modest amount of monetary, injunctive, and equitable relief at issue for each individual ETF Class Member. This action will be prosecuted in a fashion to ensure the Court's able management of this case as a class action on behalf of the Class defined above.

## COUNT I
### Unjust Enrichment
### (On Behalf of All Subscribers Charged an ETF )

41.     Plaintiff repeats the allegations contained in Paragraphs 1-40 as if fully set forth herein.

-8-

42.     This Count is asserted by Plaintiff individually and on behalf of the ETF Class, as defined herein.

43.     Defendants received and retained a benefit conferred by Plaintiff and ETF Class Members at their expense through the imposition and collection of ETFs.

44.     Defendants also received and retained a benefit conferred by Plaintiff and ETF Class Members at their expense through the imposition and collection of ETFs in excess of the amount permitted by the contract, in that Plaintiff and class members subject to a $250 ETF provision were charged $350.

45.     Defendants have benefited unjustly at Plaintiff's and Class Members' expense, which in equity and good conscience, Defendants should not be permitted to retain.

46.     Plaintiff and Class Members have no adequate remedy at law because of Defendants' conduct.

47.     As a direct and proximate result of Defendants' unjust enrichment, Plaintiff and the Class members have suffered non-monetary and monetary injury.

48.     Plaintiff, on behalf of itself and the ETF Class, is entitled to restitution from Defendants and an order to ameliorate all ETF credit-related dunning and for the disgorgement of all ETF profits, benefits, and other compensation obtained by Online Data for its wrongful conduct.

WHEREFORE, Plaintiff, individually and on behalf of the ETF Class of persons described herein, prays for an Order as follows:

A.     Finding that this action satisfies the prerequisites for maintenance as a class action and certifying the Classes defined herein;

B.     Designating Plaintiff as Class representative and counsel as ETF Class counsel;

C.     Entering judgment in favor of Plaintiff and the Classes and against Defendants;

-9-

D.    Awarding Plaintiff and Class members their individual damages and attorneys'
      fees and allowing costs, including interest thereon; and

E.    Granting such further relief as the Court deems just.

## COUNT II
### Declaratory Relief Pursuant To 28 U.S.C. § 2201

49.    Plaintiff repeats the allegations contained in Paragraphs 1-48 as if fully set forth
herein.

50.    This Count is asserted by Plaintiff individually and on behalf of the Class, as
defined herein.

51.    There is an actual controversy between Defendants and the Class concerning the
existence of any ETF provision within the Lease Agreements to which they are all parties, and
the enforceability of its imposition by Defendants against the Class.

52.    Pursuant to 28 U.S.C. § 2201 this Court may "declare the rights and legal
relations of any interested party seeking such declaration, whether or not further relief is or could
be sought."

53.    Plaintiff and Class Members are interested parties who seek a declaration of their
rights and legal relations vis-à-vis Defendants with regard to the existence and enforceability of
ETF provisions contained in the customer service Leases to which they are all parties.

54.    Defendants' ETF is an unenforceable penalty in that it purports to be a liquidated
damages clause when, in fact, the ETF is not a reasonable estimate of the harm Defendants might
incur, if any, in the event that the customer were to terminate his or her customer service Lease,
nor are such damages difficult or impractical to calculate.

55.    Moreover, on information and belief, the ETF is chargeable to the customer even
if the Lease is terminated by Defendants as a result of a breach by Defendants. Thus, regardless

-10-

of the reason for the termination of the customer service Lease or the fault of the parties, Defendants impose an ETF on its customers.

56.     Plaintiff and other class members who were charged and who paid ETFs to Defendants have been damaged because ETF was an illegal penalty.

57.     Plaintiff and other class members who were charged but who did not pay an ETF to Defendants have had their credit damaged because Defendants report that debts are owed by such persons when, in fact, no such debt exists.

WHEREFORE, Plaintiff, individually and on behalf of the ETF Class of persons described herein, prays for an Order as follows:

A.     Finding that this action satisfies the prerequisites for maintenance as a class action and certifying the Class defined herein;

B.     Designating Plaintiff as representative of the Class and counsel as Class counsel;

C.     Entering judgment in favor of Plaintiff and the Class and against Defendants;

D.     Awarding Plaintiff and Class members their individual damages and attorneys' fees and allowing costs, including interest thereon; and

E.     Granting such further relief as the Court deems just and proper.

-11-

## DEMAND FOR JURY TRIAL

The undersigned hereby demands a trial by jury as to all claims so triable.

Dated: New York, New York
September 8, 2010

**REESE RICHMAN LLP**

By: _____

Kim E. Richman
875 Avenue of the Americas, 18th Floor
New York, New York 10001
Telephone: (212) 643-0500
Facsimile: (212) 253-4272

*Attorneys for Plaintiff and Proposed Class*

*Of Counsel:*

Eric D. Freed
Jeffrey A. Leon
Eric C. Brunick
**FREED & WEISS LLC**
111 West Washington Street, Suite 1331
Chicago, Illinois 60602

Jim S. Calton, Jr.
**CALTON & CALTON**
226 East Broad Street
Eufaula, Alabama 36027